UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANE DOE (JW),<br><br>    Plaintiff<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS, INC. d/b/a DOUBLETREE BY HILTON<br><br>    Defendant. | Cause No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

SUMMARY

1. Sex trafficking has hit epidemic proportions in our communities, and it has had a devastating effect on the victims and a crushing financial effect on our world.

2. Sex trafficking presents a public health crisis.

3. Those facilitating sex trafficking should be held accountable.

4. It should not be our tax dollars, charities, and churches that carry the burden of the catastrophic harms and losses to sex trafficking survivors.

5. That responsibility should fall to businesses like Hilton Worldwide Holdings, Inc. d/b/a DoubleTree by Hilton ("Hilton") that have facilitated and profited from sex trafficking.

6. While Hilton profited, untold multitudes of victims were repeatedly raped and abused.

7. These victims have been left with lifelong physical, emotional, and mental injuries.

8. Jane Doe (JW) (hereinafter Jane Doe) is but one of those victims—or rather—

1

survivors.

9. No longer will businesses profit off of the exploitation and mistreatment of others.

10. Hilton and other nefarious enablers must take responsibility for their actions. That time is now.

## JURISDICTION & VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq.*

12. Since they form part of the same case or controversy as her federal claims, the Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

14. Jane Doe was trafficked in this District and Division.

## PARTIES

15. Jane Doe is a natural person who is a resident and citizen of Texas.

16. Hilton is a foreign corporation organized and existing under the laws of the State of Delaware, whose principal office is located at 7930 Jones Branch Drive, McLean, Virginia 22102. Hilton is authorized to do business in Texas but does not maintain a registered agent for service in Texas as required. Pursuant to *Tex. Civ. Prac. & Rem. Code* §17.044(b) and *Texas Business Organizations Code* §5.251 the Texas Secretary of State is an agent for service of process or complaint on Hilton. Accordingly Hilton may be served with process by serving Citations Unit, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079.

17. At all relevant times, Hilton owned, operated, controlled, and managed the DoubleTree by Hilton located at 8181 Airport Blvd., Houston, Texas 77061. Hilton is authorized to conduct business in Texas and conducts substantial business in Texas.

## FACTS

**A. Human trafficking and the sexual exploitation of minors and others is a rampant, well-known problem in the hotel industry.**

18. Traffickers have long capitalized on the hotel industry's refusal to adopt companywide anti-trafficking policies, refusal to train staff on what to look for and how to respond, and failure to establish a safe and secure reporting mechanism, and they have exploited the seclusion and privacy of hotel rooms.

19. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1]

20. Human trafficking is estimated to generate $150 billion per year in profits.[2]

21. For years, sex trafficking ventures have brazenly and openly operated out of hotels throughout this country, and those trafficking ventures have "been able to reap these profits with little risk when attempting to operate within hotels."[3]

22. In 2018 alone, 3,218 individual victims of human trafficking reached out to the Polaris Project's National Human Trafficking Hotline.[4]

---

[1] "This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (last viewed November 25, 2019) citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.
[2] Bradley Myles, Combating Human Trafficking in the Hotel Industry, Huffington Post, July 22, 2015, at https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754 (last viewed November 25, 2019); See Galucci, , supra.
[3] See Human Trafficking in the Hotel Industry, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry (last viewed November 25, 2019); see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post, June 2016, at http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victims-life_us_57714091e4b0f168323a1ed7 (last viewed November 25, 2019).

3

23. Since 2007, the National Hotline has handled 51,919 calls, accounting for a total 23,078 victims identified.[5]

24. Attorneys for the hotel industry estimate that eight out of ten arrests for human trafficking occur in or around hotels.[6]

25. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[7]

26. Hotels have been found to account for over 90% of commercial exploitation of children.[8]

27. Room rentals drive the profits of hotels, not other amenities such as food and drink purchases, spa services, restaurants and other in-room entertainment services.[9]

28. At limited service hotels and extended stay hotels, room rentals alone account for 97% of the total revenue of the hotel and the average ratio of full service, and room rentals at limited service hotels accounts for 68% of total revenue.[10]

29. According to the Polaris Project, one of the most commonly reported venues for sex trafficking to the National Human Trafficking Hotline is hotels and motels.

---

[4] 2018 Statistics from the National Human Trafficking Hotline, Polaris Project, 2018, at https://polarisproject.org/sites/default/files/Polaris_National_Hotline_2018_Statistics_Fact_Sheet.pdf (last viewed November 25, 2019).
[5] Id.
[6] Rich Keating, Human Trafficking: What is it and how it impacts the Hotel Industry, AHIA Sprint Conference 2013, available at http://ahiaattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last viewed November 25, 2019).
[7] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hotel Industry, Cornell Hotel Report, October 2015, at https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs Oct. 2015 (last viewed November 25, 2019).
[8] See Erika R. George and Scarlet R. Smith, In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).
[9] Robert Mandelbaum, Rooms Department Operations, Hospitality Net, Mar. 23, 2007, available at https://www.hospitalitynet.org/opinion/4030758.html (last viewed November 25, 2019).
[10] Id.

30. It has long been recognized that exploiters and traffickers use hotel and motel rooms when setting up "dates" between victims of sex trafficking and those individuals purchasing sex.

31. As stated in a publication by Cornell University on the issue, "the hospitality industry is undoubtedly involved in the sex trafficking industry … and therefore have an inherent responsibility to deter the crime and can be liable for failing to do so."

32. According to a 2012 BEST study, 63% of trafficking incidents happen in hotels, ranging from luxury to economy, with the majority of victims being children.

33. The ease of access and anonymity of hotels has led to an explosion in child sexual exploitation nationwide.

34. Several industry leaders and municipalities, including the City of Baltimore and the State of Connecticut, now require mandatory training on how to recognize and respond to the signs of human trafficking and the sexual exploitation of minors.

35. The United States Department of Homeland Security established the Blue Campaign to end human trafficking.[11]

36. In a recent Blue Campaign bulletin, the Department of Homeland Security outlines that traffickers have long used the hotel industry as a hotbed for human trafficking.

37. The recent Blue Campaign bulletin recommends policies and procedures that the industry can implement to help prevent human trafficking and the sexual exploitation.

38. Some of the recommended policies and procedures include learning to identify warning signs and indicators of human trafficking.

---

[11] https://www.dhs.gov/blue-campaign (last viewed December 20, 2019).

39. Warning signs identified in the recent Blue Campaign bulletin include, but are not limited to:

    a. patrons paying for a room with cash or a pre-paid credit card;

    b. other guests lingering outside a hotel room for long periods of time;

    c. non-guests coming and going from the premises; and

    d. minors paying for hotel rooms.

40. These recommended policies and procedures are intended to reduce human trafficking.

41. Hilton knew or should have known of these recommended policies and procedures.

42. At all material times, Hilton maintained control over the operation of DoubleTree by Hilton located at 8181 Airport Blvd., Houston, Texas 77061.

43. DoubleTree by Hilton, located at 8181 Airport Blvd., Houston, Texas 77061 was branded as a Hilton.

44. Guests of Hilton are advertised to expect consistency among hotel locations.

45. Guests of Hilton are told to be certain that each Hilton branded hotel complies with standards of Hilton.

46. Hilton had actual authority over the operation of DoubleTree by Hilton at 8181 Airport Blvd., Houston, Texas 77061. Hilton had apparent authority over the operation of DoubleTree by Hilton at 8181 Airport Blvd., Houston, Texas 77061.

47. Hilton exercised its actual and apparent authority to control the day-to-day operations at DoubleTree by Hilton at 8181 Airport Blvd., Houston, Texas 77061.

48. Hilton is liable for the acts of its franchisees when it exerts day-to-day control over its franchisees.

49. Hilton is liable for the acts of its franchisees if guests believe that it controls the operation of its franchisees.

50. Hilton is a quality brand.

51. Hilton strives for consistency among its franchisee's hotels.

52. Hilton implements policies for its franchisees to meet certain standards.

53. Hilton implements procedures for its franchisees to adhere to consistent standards.

54. Hilton exercises control over its franchisees to ensure quality control.

55. Hilton exercises control over decisions related to payment options for rooms, including but not limited to allowing payment by cash or pre-paid credit card.

56. Hilton exercises control over policies regarding guests lingering in hallways.

57. Hilton exercises control over security, including but not limited to decisions related to security guards, lighting, and other security measures.

58. Hilton exercises control over training of hotel employees.

59. Hilton exercises an ongoing right of control over its hotels, including but not limited to DoubleTree by Hilton at 8181 Airport Blvd., Houston, Texas 77061, through one or more of the following actions:

    a. hosting online bookings on Hilton's domain;

    b. requiring Hilton branded hotels to use Hilton's customer rewards program;

    c. setting employee wages;

    d. making employment decisions;

    e. advertising for employment;

    f. sharing profits;

    g. standardized training methods for employees;

      h.  building and maintaining the facility in a specified manner;

      i.  standardized or strict rules of operation;

      j.  regular inspection of the facility and operation;

      k.  fixing prices; and/or

      l.  other actions that deprive DoubleTree by Hilton branded hotels of independence in their business operations.

**B.**     **Jane doe was trafficked at a Hilton hotel.**

60. Jane Doe was trafficked at DoubleTree by Hilton at 8181 Airport Blvd., Houston, Texas 77061.

61. Hilton refused to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent the sexual exploitation at their properties. This failure lead to Jane Doe's continued sexual exploitation and sexual assault while Hilton turned a blind eye to the plague of human trafficking and the sexual exploitation of minors and others at their location.

62. Human trafficking is a crime under federal law.

63. Human trafficking is a crime under Texas law.

64. Jane Doe's traffickers committed a federal crime by trafficking Jane Doe.

65. Jane Doe's traffickers committed a Texas crime by trafficking Jane Doe.

66. Hotels should not allow illegal activity on their premises.

67. Hotels should take reasonable steps to prevent human trafficking on their premises.

68. There is no reason a hotel should tolerate any known human trafficking on its premises.

69. A reasonably prudent hotel trains its employees to recognize signs of human trafficking.

70. A reasonably prudent hotel trains its employees to report signs of human trafficking.

71. A reasonably prudent hotel implements policies to prevent human trafficking.

72. Hilton complies with hotel industry recommended practices.

73. Hilton recognizes the need to combat human trafficking occurring at hotels.

74. The people who worked there knew or should have known that Jane Doe was staying at their property and recognized unusual and suspect conduct surrounding her stay.

75. More specifically, upon information and belief, the following signs of human trafficking were readily present at the DoubleTree by Hilton hotel:

    a. Excessive single male traffic by non-patrons entering and exiting the hotel;

    b. Increased male foot traffic and lingering non-patrons lined in hallways;

    c. Patrons paying for rooms with cash or pre-paid cards;

    d. Minors paying for hotel rooms;

    e. Declining room service for extended periods of time;

    f. High volume of used condoms left in room; and

    g. Other signs of sex trafficking.

76. Nevertheless, Hilton continued to accept financial payment for her stay all while doing nothing to prevent or stop criminal activity-sex trafficking, including the trafficking of Jane Doe-from occurring on their property.

77. At the DoubleTree by Hilton premises, Jane Doe was repeatedly and brutally sexually assaulted.

### FIRST CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPA

78. Jane Doe incorporates all other allegations.

79. At all relevant times, Jane Doe was and is a victim within the meaning of 18 U.S.C. § 1595(a).

80. At all relevant times, Hilton was and is a perpetrator within the meaning of 18 U.S.C. § 1595(a).

81. Hilton benefitted, by receiving financial and other compensation, through its participation in a venture involving the trafficking, harboring, and maintenance of human trafficking victims in exchange for financial benefits, including the sex trafficking of children. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

82. Hilton knew or should have known it was participating in a venture involving the trafficking, harboring, and maintenance of human trafficking victims in exchange for financial benefits, including the sex trafficking of children, in violation of the TVPRA, 18 U.S.C. § 1581, et seq.

83. Hilton's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to Jane Doe.

### SECOND CAUSE OF ACTION—TEXAS CRPC § 98

84. Jane Doe incorporates all other allegations.

85. Hilton's acts, omissions, and commissions, taken separately and/or together, outlined above constitute a violation of Texas Civil Practice and Remedies Code § 98.002.

86. Specifically, Hilton had a duty not to knowingly benefit from trafficking of persons, including Jane Doe.

87. At all relevant times, Hilton breached this duty by knowingly participating in the facilitation of trafficking, including the trafficking of Jane Doe, by acts and omissions, including but not limited to:

    a) Profiting from renting rooms to those looking to sexually exploit Jane Doe;

    b) Increasing profit margins due to lower operation costs by refusing to implement proper training;

    c) Increasing profit margins due to lower operation costs by refusing to install proper security device;

    d) Increasing profit margins due to lower operation costs by refusing to install adequate lighting and security cameras;

    e) Increasing profit margins due to lower operation costs by refusing to hire qualified security officers;

    f) Increasing profit margins as a result of continued customer loyalty by child molesters and johns who sought to sexually exploit minors and others;

    g) Benefiting by avoiding law enforcement officials and/or spending the time to address, report, and properly solve human trafficking and the sexual exploitation on Hilton's premises;

    h) Benefiting by avoiding criminal liability by corporations and/or employees who failed to report child abuse—which is a violation of the Texas Penal Code;

    i) Increasing profit margins and benefitting by knowingly catering to the needs of a criminal sub-culture that is looking for locations that will not actively enforce laws against human trafficking and the sexual exploitation of minors and others or take active security measures to prevent human trafficking and the sexual exploitation of minors and others on their property.

88. Hilton received substantial financial benefits as a result of these acts and/or omissions.

89. Hilton received a direct financial benefit of the hotel rental fees paid by Jane Doe's trafficker and johns, who sexually exploited Jane Doe.

90. Hilton's acts and omissions, singularly or collectively, violated Texas Civil Practice and Remedies Code section 98.

91. Hilton's violation of Texas Civil Practice and Remedies Code section 98 proximately caused legal injuries to Jane Doe.

92. Each of Hilton's negligent acts and omissions, singularly or collectively, constituted negligence and proximately caused legal injuries to Jane Doe.

### THIRD CAUSE OF ACTION—NEGLIGENCE

93. Jane Doe incorporates all other allegations.

94. Hilton had a duty of care to operate each of their hotels in a manner that did not endanger Jane Doe.

95. Hilton had a duty of care to take reasonable steps to protect the foreseeable victims of the danger created by their acts and omissions

96. Such foreseeable risks include the trafficking and sexual exploitation of minors and others due to Hilton fostering an environment that encouraged this behavior.

97. Despite this knowledge, Hilton failed to take reasonable steps to protect persons such as Jane Doe from being trafficked or exploited.

98. Hilton failed to exercise ordinary care as would a reasonably prudent person under the same circumstances.

99. Hilton had a duty to the general public and to persons being trafficked at its hotel, including Jane Doe, to take reasonable steps to protect them from the foreseeable dangers of human trafficking.

100. Hilton breached the foregoing duties because they knew, or should have known, that adults working as sex traffickers were causing by any means minors and others, including Jane Doe, to be sexually exploited and trafficked at Hilton's properties on a repeated basis.

12

101. Hilton was also negligent in one or more of the following, non-exclusive particulars:

   a) Renting rooms to those looking to sexually exploit Jane Doe;

   b) Failing to implement proper training of Hilton's employees and managers regarding the signs of human trafficking and sexual exploitation;

   c) Failing to install proper security devices in the Hilton's lobby, hallways, and parking lots that would help (a) deter human trafficking and the sexual exploitation of minors and others and (b) be used to identify potential human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

   d) Failing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and suspicious males looking to sexually exploit persons such as Jane Doe on Hilton's property;

   e) Failing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

   f) Failing to implement proper security measures to prevent sexual exploitation at Hilton's properties;

   g) Encouraging and benefitting from continued customer loyalty by child molesters and johns who sought to sexually exploit minors and others, including Jane Doe, due to Hilton's lack of measures against the sexual exploitation of minors and others and human trafficking. This customer loyalty lead to continued sales;

   h) Avoiding law enforcement officials and/or spending the time to address, report, and properly solve human trafficking and the sexual exploitation of such as Jane Doe on Hilton's premises; and

   i) Avoiding criminal liability by corporations and/or employees who failed to report child abuse—which is a violation of the Texas Penal Code.

102. As a direct and proximate result of the Hilton's wrongful acts and omissions, Jane Doe suffered, and continues to suffer, severe injuries and damages.

103. Each of Hilton's negligent acts and omissions, singularly or collectively, constituted negligence and proximately caused legal injuries to Jane Doe.

### FOURTH CAUSE OF ACTION—NEGLIGENCE PER SE

104. Jane Doe incorporates all other allegations.

105. Hilton's acts and omissions violated various provisions of federal law, including the TVPA.

106. Hilton's acts and omissions violated various provisions of Texas law, including Texas Civil Practice and Remedies Code section 98.

107. Hilton's failure to comply with the standard of care set forth in these laws constitutes negligence per se.

108. Each of Hilton' negligent acts and omissions, singularly or collectively, constituted negligence per se and proximately caused legal injuries to Jane Doe.

### FIFTH CAUSE OF ACTION—GROSS NEGLIGENCE

109. Jane Doe incorporates all other allegations.

110. Hilton's acts and omissions constitute gross neglect.

111. Viewed objectively from the standpoint of Hilton at the time of the incidents, Hilton's acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Jane Doe.

112. Hilton nevertheless evidenced conscious indifference to the rights, safety, or welfare of others, including Jane Doe.

113. As a result of Hilton's gross neglect, Jane Doe was exposed to and did sustain serious and grievous personal injury.

114. Each of Hilton's negligent acts and omissions, singularly or collectively, constituted gross negligence and proximately caused legal injuries to Jane Doe.

115. Exemplary damages are warranted for Hilton's gross negligence.

## DAMAGES

116. Hilton's acts and omissions, individually and collectively, caused Jane Doe to sustain legal damages.

117. Jane Doe is entitled to be compensated for personal injuries and economic damages, including:

    a.    Actual damages;

    b.    Direct damages;

    c.    Incidental and consequential damages;

    d.    Mental anguish and emotional distress damages (until trial and in the future);

    e.    Lost earning capacity in the future;

    f.    Necessary medical expenses;

    g.    Physical pain and suffering;

    h.    Physical impairment;

    i.    Disfigurement;

    j.    Restitution;

    k.    Unjust enrichment; and

    l.    Penalties.

118. Jane Doe is entitled to exemplary damages.

119. Jane Doe is entitled to treble damages.

120. Jane Doe is entitled to recover attorneys' fees and costs of court.

121. Jane Doe is entitled to pre- and post-judgment interest at the maximum legal rates.

122. A constructive trust should be imposed on Hilton, and the Court should sequester any benefits or money wrongfully received by Hilton for the benefit of Jane Doe.

### JURY TRIAL

123. Jane Doe demands a jury trial on all issues.

### RELIEF SOUGHT

124. Wherefore, Jane Doe respectfully requests judgment against Hilton for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

FIBICH LEEBRON
COPELAND BRIGGS


By: __/s/ Kenneth T. Fibich__
Kenneth T. Fibich
State Bar No. 06952600
S.D. Tex. No. 5482
tfibich@fibichlaw.com
Erin K. Copeland
State Bar No. 24028157
S.D. Tex. No. 29219
ecopeland@fibichlaw.com
1150 Bissonnet
Houston, TX 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030

ANNIE MCADAMS, PC

Annie McAdams
Texas Bar No. 24051014
S.D. Tex. No. 1514589
1150 Bissonnet
Houston, TX 77005
Telephone: (713) 785-6262
Facsimile: (866) 713-6141
annie@mcadamspc.com

ATTORNEYS FOR JANE DOE